**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
September 03, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Nik Sams
DEPUTY CLERK

CLAUDE DAVID CONVISSER,

*Plaintiff*,

v.

S&P GLOBAL MARKET INTELLIGENCE, INC., ET AL.,

*Defendants*.

CASE NO. 3:26-CV-00090

MEMORANDUM OPINION & ORDER

JUDGE NORMAN K. MOON

Plaintiff Claude Convisser ("Convisser") filed a 150-page, five-count Complaint against eleven different Defendants, alleging violations of procedural and substantive due process and the First Amendment against the University of Virginia and the Jefferson-Madison Regional Library and common law assault and conspiracy against the remaining Defendants. *See* Dkt. 1. Convisser did not pay the $405 filing fee but instead filed a motion for leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. 2. Given his allegations of homelessness, the Court will grant his IFP motion. However, Convisser's IFP status triggers 28 U.S.C. § 1915(e)'s initial screening requirement. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006). Because his Complaint fails to state any federal cause of action, the Court must *sua sponte* dismiss his federal claims and will decline to exercise supplemental jurisdiction over any state law claims.

## I. BACKGROUND

Plaintiff's Complaint spends many pages alleging the fossil fuel industry is conspiring against him. *E.g.*, Dkt. 1 ¶ 1. It also includes allegations about an unrelated "assault." *E.g.*, *id.* ¶ 133. But the heart of his Complaint—at least as it relates to potential federal claims—focuses on

his recent suspension from two Charlottesville-area libraries. First, the University of Virginia ("UVA") banned Convisser from its premises for four years, *e.g.*, *id.* ¶ 20; and second, the Jefferson-Madison Regional Library suspended his use of the library for three months, *e.g.*, *id.* ¶ 61.

Regarding his allegations against UVA, Convisser claims that he began using the law school's library in July 2024. *Id.* ¶ 42. At that time, he alleges the library was open to the public 24/7. *Id.* However, he admits that during the 2024 fall semester UVA began restricting the public's access to the law library between 6:00 p.m. and 7:00 a.m. *Id.* During those times, only individuals with card access (*i.e.*, students, faculty, and staff) could access the library. *Id.* Plaintiff admits that he did not have "card access" to the law library, but that he nonetheless would enter the law library after hours and would stay in the law library through the night. *Id.* For example, Plaintiff admitted that in August 2024, he stayed in the law library throughout the night and took a "refreshing nap" on the floor. *Id.* This is when UVA issued its first "no trespass" warning to Convisser. *Id.* Over the course of the next two years, UVA issued two more no trespass warnings and ultimately banned Convisser from the premises for four years after he violated the third no-trespass warning. *Id.* Despite receiving these no trespass warnings, Convisser continued to violate UVA policy by entering the law school's library after hours by either "tailgating" individuals who had card access or by asking them for entry. *Id.* ¶¶ 49, 52. For example, he admits that even though the law school's doors were locked, he would knock on glass doors and windows to ask individuals with "card access" to let him inside. *Id.* ¶ 52. He also admits that he far exceeded UVA's 20-page limit for printing and copying. *Id.* And he acknowledges that, at times, he confronted UVA personnel when he was asked to leave the library and that those staff members represented to UVA police that they feared for their safety during those encounters. *Id.*

In addition to admitting to multiple violations of UVA's rules regarding its law library, Convisser also admits that UVA had a mechanism for him to appeal the trespass notices he received; that he availed himself of this appellate process multiple times; and that on at least three occasions Chief of Police Timothy Longo rescinded the trespass notices. *Id.* ¶¶ 42, 52. However, following Convisser's appeal of the fourth no trespass notice, Chief Longo denied the appeal and the four-year ban remained in effect. *Id.*

As to his allegations against the Jefferson-Madison Regional Library, he claims that he received a three-month suspension on July 16, 2026. *Id.* ¶ 61. The suspension letter noted that Convisser violated library policy in three respects: first, he did not limit his interaction with library staff to "library business"; second, he disrupted library services; and third, he did not always keep his personal belongings with him. *Id.*, Pl.'s Ex. 15. The letter post-dated an April 20, 2026 meeting between Convisser and the library's director, at which time the director verbally warned Convisser that his conduct violated library policies and that further violations would result in a suspension. *Id.* ¶ 59; *see also* Pl.'s Ex. 17. Convisser also admits that the suspension letter allowed him the opportunity to meet with the library's director to discuss his suspension. *Id.* He further concedes that he met with the library's director on July 21, 2026, to appeal his suspension. *Id.* ¶ 62. During that meeting, Convisser alleges that the library's director reiterated that he was being suspended for violating the library's policies; however, according to Convisser, the director offered no specific examples of misconduct. *Id.* This allegation is belied, however, by Convisser's letter to the library's director, which attempts to refute (but actually concedes) specific violations of library policy. *Id.*, Pl.'s Ex. 17. For example, in his letter, Convisser admits that on multiple occasions he left bags laying around the library unattended. *Id.*

## II. LEGAL STANDARDS

28 U.S.C. § 1915(e) permits district courts to, on their own motion, dismiss IFP complaints that are frivolous, malicious, or fail to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B); *Michau v. Charleston Cnty.*, 434 F.3d 725, 728 (4th Cir. 2006). This procedural vehicle is governed by the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Minter v. Clarke*, 2022 WL 4537904, at *3 (E.D. Va. Sep. 12, 2022) (comparing standards). To survive this stage, a plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept a plaintiff's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). Although a complaint "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action" in order to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Because Convisser is proceeding *pro se*, his allegations would ordinarily receive a liberal construction. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). However, because Convisser is a licensed member of the Virginia Bar, his Complaint does not enjoy any special solicitude.[1] Regardless, though, the Court will not draw inferences that are "unsupported by facts

---

[1] *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (noting that "the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation" and "a lawyer representing himself ordinarily receives no such solicitude at all"); *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008) (concluding that it was not an abuse of discretion to deny pro se practicing attorneys special consideration); *Comm. on the Conduct of Att'ys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007) (declining to extend liberal construction to a licensed attorney); *Godlove v. Bamberger, Foreman, Oswald, & Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of pro se applicants gently, but a *pro se* lawyer is entitled to no special consideration.").

alleged in the complaint." *Green v. McHugh*, 793 F. Supp. 2d 346, 349 (D.D.C. 2011); *see also Grigg v. Montana Dep't of Justice, et al.*, 2026 WL 1134159, at *2 (D.N.D. Feb. 4, 2026).

## III. ANALYSIS

### A. Procedural Due Process

Convisser alleges that UVA and the Jefferson-Madison Regional Library violated his right to procedural due process by suspending him from their respective libraries. Dkt. 1 ¶¶ 95–104. For procedural due process claims, "the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis added). To succeed on a procedural due process claim, a plaintiff must: (1) identify a protected liberty or property interest; (2) demonstrate that he was deprived of that interest; and (3) show that the procedures employed by the defendant to deprive him of that interest were constitutionally inadequate. *See Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 248 (4th Cir. 2007); *see also Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 719 (E.D. Va. 2015); *Iota XI Chapter of the Sigma CHI Fraternity v. Patterson*, 538 F. Supp. 2d 915, 922 (E.D. Va. 2008), *aff'd Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138 (4th Cir. 2009).

The Court will assume *arguendo* that Convisser has a protected liberty interest in access to UVA's law library and the Jefferson-Madison Regional Library,[2] and that those entities deprived Convisser of that liberty interest by temporarily barring his access. However, his procedural due

---

[2] Although the Fourth Circuit has not squarely addressed the issue, other courts have held that there is a positive First Amendment right to "some level of access to a public library, the quintessential locus of the receipt of information." *Grant-Davis v. Board of Trustees of Charleston County Public Library*, 2017 WL 9360875, at *19 (D.S.C. May 24, 2017) (collecting cases).

process claims fail because he has not alleged that he received "constitutionally deficient" process before being suspended from either library. *See Mathews v. Eldridge*, 424 U.S. 319 (1976).[3]

The Court is unaware of any Supreme Court or Fourth Circuit precedent establishing the amount of process a member of the public is entitled to before being suspended from a public library. Therefore, under *Mathews*, the Court must weigh the liberty interest impacted by the official action; the risk of "an erroneous deprivation of such interest through the procedures used, and the probable value, if any," of additional safeguards; and the Government's opposing interests. *Williamson v. Stirling*, 912 F.3d 154, 177 (4th Cir. 2018) (quoting *Mathews*, 424 U.S. at 335). Weighing these interests in this case, the Court cannot say that either UVA or the Jefferson-Madison Regional Library violated Convisser's procedural due process. Both institutions gave Convisser written and verbal warnings that his behavior may result in suspension; both institutions gave him written notice of his suspensions and provides the reasons for his suspensions; and both institutions provided for a post-deprivation appeals process. For example, Convisser concedes that UVA allowed him to appeal his trespass notices to the Chief of Police and that past appeals had been successful.[4] Dkt. 1 ¶¶ 42, 52. He also concedes that the Jefferson-Madison Regional Library provided him with a post-deprivation meeting with the director of the library to discuss his suspension. *Id.* ¶ 62. Given UVA's and Jefferson-Madison Regional Library's important government interest in enforcing their codes of conduct and ensuring that other patrons (and staff) were not disturbed by Convisser's behavior, the Court concludes that the amount of process

---

[3] Convisser does not argue what constitutionally sufficient process would be in this context but appears to use the baseline requirements of notice and an opportunity to be heard. *Cf. Goss v. Lopez*, 419 U.S. 565, 581 (1975).

[4] The fact that Convisser's past appeals were successful demonstrates that UVA's system protects against unlawful constitutional deprivations without process.

Convisser received was legally adequate.[5] *See In re Watkins*, 2023 WL 5664171, at *2 (11th Cir. Sept. 1, 2023) (a library may remove a patron who is "disrupt[ing] the quiet and peaceful library environment."); *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1264 (3rd Cir. 1992) (a library may remove a patron who has "offensive bodily hygiene" that "unreasonably interfer[es] with other patrons' use and enjoyment of the Library"); *Bretzing v. Harrison Cnty. Pub. Libr. Sys.*, 2026 WL 2044871, at *6 (S.D. Miss. July 15, 2026) (a patron's procedural due process claim fails where the library provided written notice of the suspension and allowed for a post-deprivation hearing).

Accordingly, his procedural due process claim fails as a matter of law.

**B. Substantive Due Process**

A substantive due process claim, like a procedural due process claim, requires deprivation of "a constitutionally protected interest in life, liberty, or property." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 80 (4th Cir. 2016). However, unlike procedural due process, which addresses the sufficiency of the government's process, substantive due process deals with the reasonableness of the government's decision. *Id.* A violation of an individual's substantive due process rights only occurs when the official action is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999).

[5] Although a pre-deprivation hearing is usually required, a post-deprivation hearing is permissible under certain circumstances like when a library patron is suspended for being disruptive. *See Bretzing v. Harrison Cnty. Pub. Libr. Sys.*, 2026 WL 2044871, at *7 (S.D. Miss. July 15, 2026).

Again, the Court will assume that Convisser has a liberty interest in accessing public libraries,[6] and that his respective suspensions deprived him of that right. While the Fourth Circuit has not addressed whether a plaintiff has a substantive due process right to access public libraries, other courts have considered whether suspensions or expulsions from public libraries violate substantive due process and have held that they do not. *See*, *e.g.*, *Jardine-Byrne v. Santa Cruz Cnty.*, 2017 WL 5525900, at *4 (N.D. Cal. Nov. 17, 2017) (dismissing substantive-due-process claim because library's revocation of plaintiff's after-hours access did not amount to sufficiently "egregious" conduct); *Lu v. Hulme*, 2013 WL 1331028, at *8 (D. Mass. Mar. 30, 2013) (homeless library patron who was selectively excluded from library did not state substantive-due-process claim because defendants' alleged conduct in excluding him could not be "found to shock the conscience."). Here, UVA's and the Jefferson-Madison Regional Library's conduct does not "shock the conscience." *Hawkins*, 195 F.3d at 738. To the contrary, both institutions reacted to admitted violations of their codes of conduct and did exactly what the law allows—suspend a patron who affected the ability of other patrons and staff to enjoy the libraries.

Given the reasonableness of UVA's and the Jefferson-Madison Regional Library's actions under the circumstances, Convisser has failed to plead a substantive due process violation. This is

[6] Neither the Supreme Court nor the Fourth Circuit has ever identified a substantive due process right of access to a public library. However, as noted above, some courts have recognized a First Amendment right to receive information, which includes a right to some level of access to public libraries. *See Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1255 (3rd Cir. 1992); *Armstrong v. Dist. of Columbia Public Library*, 154 F.Supp.2d 67, 75 (D.D.C. 2001). For First Amendment purposes, public libraries have been classified as limited public forums which means that library management is obligated to allow patrons to exercise such rights as are consistent with that designation; however, libraries may adopt codes of conduct that governs the public's interaction with the library. *Kreimer*, 958 F.2d at 1262; *see also Doyle v. Clark Cnty. Pub. Libr.*, 2007 WL 2407051, at *4 (S.D. Ohio Aug. 20, 2007).

especially so where he was repeatedly warned about the libraries' rules of conduct and chose to willfully flout those rules.

### C. First Amendment Retaliation

In his third and final claim against UVA and the Jefferson-Madison Regional Library, Convisser alleges those institutions suspended him from their libraries in retaliation for his vocal opposition to: (1) the fossil fuel industry, and (2) the opening of an emergency homeless shelter in Charlottesville, Virginia. Dkt. 1 ¶¶ 62, 123–127.

To state a colorable First Amendment retaliation claim, a plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). Convisser has failed to allege any causal relationship between his speech and his suspensions from the libraries. For example, although he alleges the director of the Jefferson-Madison Regional Library knew about his speech that was critical of the homeless shelter, he does not allege any facts showing why a local librarian would have suspended his access *because* of that speech. Such a conclusory assertion of retaliation, which requires stacking inference upon inference, is insufficient to establish a retaliation claim. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *see also Adkins v. Bank of America, N.A.*, 2014 WL 3615876, *6 (E.D. Va. July 18, 2014) (a court will not "pile inference upon inference" to support required causation element).

Convisser's retaliation claim against UVA fares even worse because there are no allegations establishing that the individual(s) who decided to suspend Convisser were aware of his protected speech against the fossil fuel industry. *See Ream v. In-Q-Tel, Inc.*, 2026 WL 2044019, at *8 (E.D. Va. July 15, 2026) (a key aspect of proving causation for a retaliation claim is

establishing the decisionmaker knew about the protected activity). But even if there was evidence that UVA knew about Convisser's anti-fossil fuel speech, there is nothing connecting that protected activity to UVA's decision to ban him from its premises for four years. The fact that a creative plaintiff can find a connection between protected activity and an adverse action does not make that connection plausible. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557).

**D. State Law Assault and Conspiracy Claims**

Convisser has not sufficiently alleged diversity jurisdiction. Specifically, it appears he is a citizen of Virginia for the purposes of the § 1332 analysis, Dkt. 1 ¶ 12,[7] and that some of the defendants are also citizens of Virginia. Therefore, the parties appear to be non-diverse. *See Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 352 (4th Cir. 2020) ("diversity must be 'complete' to satisfy this Congressional grant" of jurisdiction under § 1332(a)). But even if there was complete diversity, Convisser has not alleged $75,000 in damages, which also precludes this Court from exercising jurisdiction under § 1332.

Therefore, the only other basis for excercising federal jurisidction over Convisser's state law claims is supplemental jurisdiction. 28 U.S.C. § 1367. To the extent Convisser states any

---

7 For § 1332(a), an individual's citizenship is determined by domicile. *See Williamson v. Osenton*, 232 U.S. 619, 624–25 (1914). A party's domicile is established at the time a case is filed, *see Freeport–McMoRan v. KN Energy, Inc.*, 498 U.S. 426, 428–29 (1991), and it is determined by the party's place of residence and intent to remain in that place indefinitely. *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Plaintiff's Complaint demonstrates that he has resided in Virginia for at least two years and evidences no intent to reside someplace else in the future. Dkt. 1 ¶ 42 (alleging that Plaintiff regularly used UVA's law library between August 2024 and July 2026).

state law claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over those claims. *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) ("[F]ederal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away.").

**E. Rule 8 Dismissal**

To the extent Convisser's Complaint states any claims and the Court erred by holding otherwise, the Court would have nonetheless dismissed the Complaint for violating Rule 8's "short and plain statement" requirement. *See* Fed. R. Civ. P. 8(a). Dismissal is appropriate under Rule 8 where a complaint is so long as to make the complaint unintelligible. *See, e.g., Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (affirming dismissal of 99-page complaint because "[i]n its sheer length, [plaintiff] has made her complaint unintelligible by scattering and concealing in a morass of irrelevancies the few allegations that matter"); *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (same); *B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009) (same). Convisser's 150-page Complaint undoubtedly runs afoul of Rule 8, and is alternatively dismissed as unnecessarily prolix.

**F. Misjoinder**

If all of these pleading flaws were not enough, Convisser's claims are also misjoined. *See* Fed. R. Civ. P. 21. Misjoinder occurs when a single party or multiple parties fail to satisfy the requirements for permissive joinder under Rule 20. *See id.* Under Rule 20, multiple defendants may be joined in one action where: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). It is well-settled that a district court has broad

discretion under Rule 21. *See Stewart Eng'g, Inc. v. Cont'l Cas. Co.*, 2017 WL 432792, at *1 (E.D.N.C. Jan. 31, 2017) ("Rule 21 gives the court tools to jettison those parties and claims that are not within its jurisdiction or that are not conveniently prosecuted together, preserving parties and claims that are properly before it.") (quoting Moore's Federal Practice § 21.05 (3d ed. 2011)).

Here, Convisser's procedural and substantive due process and First Amendment retaliation claims against UVA are entirely unrelated to his claims against the Jefferson-Madison Regional Library. Likewise, his assault claim is unrelated to any other claim, as is his conspiracy claim. A litigant cannot lump any and all claims he may have against the world into a single complaint. To the extent Convisser can ever adequately plead his claims against UVA, the Jefferson-Madison Regional Library, and the other defendants, Rule 21 requires that he file separate complaints against each entity. Because Convisser's Complaint also runs afoul of Rule 21, the Court would sever Counts 1, 2, and 3 against the Jefferson-Madison Regional Library and Counts 4 and 5 if any claim survived § 1915(e) review.

## IV. CONCLUSION

For the foregoing reasons, Convisser's motion for leave to proceed *in forma pauperis* (Dkt. 2) is **GRANTED**. Following the Court's review of his Complaint under § 1915(e), his claims are **DISMISSED WITHOUT PREJUDICE**. All other pending motions, including his motion for a temporary restraining order,[8] are **DENIED AS MOOT**.

[8] Given the dismissal of Convisser's claim under § 1915(e), he cannot satisfy the requirements for a TRO. *See Henderson ex rel. NLRB v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018) ("[E]ach of these four factors must be satisfied to obtain [a temporary restraining order]": (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent relief; (3) the balance of equities; and (4) the public interest) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)).

The Clerk is directed to send a copy of this Memorandum Opinion & Order to all parties of record, and to strike this matter from the Court's active docket.

It is **SO ORDERED**.

Entered this 3rd day of September, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE